J-S24001-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: H.G., A MINOR | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: J.G., MOTHER | : : : : : : : | |
| | : | No. 361 WDA 2024 |

Appeal from the Order Entered February 27, 2024
In the Court of Common Pleas of Allegheny County Orphans' Court at
No(s): CP-02-AP-0000182-2023

BEFORE:   BOWES, J., SULLIVAN, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY BOWES, J.:                    **FILED:  August 20, 2024**

J.G. ("Mother") appeals the February 27, 2024 order involuntarily terminating her parental rights to her daughter, H.G.,[1] born December 2021.[2] After careful review, we affirm.

We gather the relevant factual and procedural history of this matter from the certified record.  Mother first came to the attention of the Allegheny County Office of Children, Youth, and Families ("CYF") shortly after H.G.'s

_____

[*] Former Justice specially assigned to the Superior Court.

[1]  Following her birth, H.G.'s first name was changed.  **See** N.T., 2/9/24, at 29-30.  To avoid confusion, we will refer to the child implicated in these proceedings by the name that appears in the case caption.

[2]  H.G.'s putative father, S.B., passed away in December 2022 before paternity could be definitively established.  **See** N.T., 2/9/24, at 5.  In the same order terminating Mother's parental rights, the orphans' court also terminated the parental rights of any unknown father.  No such individual has ever made themselves known, or filed an appeal, in this case.

birth. At that time, CYF received a ChildLine report from Magee Women's Hospital indicating that both Mother and H.G. had tested positive for, *inter alia*, cocaine and opiates. *See* N.T., 2/9/24, at 9-11; CYF Exhibit 1 at 6-7. H.G. was underweight at birth and required treatment with morphine to help wean her from narcotics. *See* CYF Exhibit 1 at 6-7. Mother independently admitted to using narcotics. *See* N.T., 2/9/24, at 27.

On January 5, 2022, CYF was awarded emergency protective custody of H.G., which was confirmed at a shelter hearing held two days later. On March 2, 2022, the trial court adjudicated H.G. dependent, and established her initial permanency goal as reunification.[3] She was placed in foster care with C.D. ("Foster Mother"), which was administered by TRAC Services for Families ("TRAC"). *See id*. at 24, 31-32. H.G. has remained in Foster Mother's care throughout this case. We also discern that Foster Mother is a pre-adoptive resource for H.G. *See id*. at 41 (indicating that CYF conducted an "adoption home study" as to Foster Mother). Foster Mother was also duly appointed as H.G.'s secondary medical and educational decisionmaker.

Prior to H.G.'s dependency adjudication, Mother underwent a drug and alcohol assessment through the Pennsylvania Organization for Women in Early Recovery ("POWER"), which referred her for treatment. *See* CYF Exhibit 1 at 7. In furtherance of reunification, Mother was directed to participate in

---

[3] On May 11, 2023, the trial court established a concurrent permanency goal of adoption. Mother did not appeal this change in circumstance.

substance abuse treatment, submit to random urine drug screens, and maintain contact with CYF and H.G. *See id*. at 14, 17.

In permanency review orders issued between May 2022 and November 2022, Mother's initial compliance and progress was largely deemed to be minimal by the trial court. *See id.* at 16-28. Specifically, Mother struggled to engage with an appropriate substance abuse treatment program and failed to regularly attend her urine screenings. *See id.* at 17-19. Although she eventually began inpatient treatment through Pyramid, she absconded from the program against medical advice in November 2022 and was briefly declared a missing person. *See id.* at 24. During this same time period, Mother was also charged with criminal offenses related to possession of narcotics and driving with a suspended license. *See id.* at 27.

Similar orders issued between February 2023 and July 2023, however, indicated that Mother's efforts temporarily improved. She completed an inpatient treatment program through Gateway and an outpatient treatment program at Pyramid. *See id.* at 32, 41. Accordingly, the trial court evaluated her progress and compliance as moderate to substantial during this period. Nonetheless, Mother tested positive for fentanyl on two separate occasions and cocaine on a third testing date. *See id*. at 41, 46. Thereafter, the trial court rated Mother's compliance and progress as minimal. *See id*. at 46.

Although Mother has engaged in supervised visitations with H.G., she has been inconsistent in terms of her regular participation. *See* N.T., 2/9/24,

at 47-50. Overall, the certified record indicates that Mother participated in 107 of approximately 195 scheduled visitations with her daughter. *Id*.

On July 27, 2023, CYF filed a petition seeking to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)-(b).[4] The orphans' court held a termination hearing on February 9, 2024, at which time H.G. was approximately two years old. Therein, the agency adduced testimony from CYF caseworkers Patrick Riley and Rick Ogden, as well as from Amy Szymanski, a caseworker and program supervisor at TRAC. CYF also introduced extensive documentation relating to the dependency proceedings. Mother was represented by counsel and testified by phone from White Deer Run, an inpatient rehab facility. *Id*. at 9-10.

On February 27, 2024, the orphans' court filed an order involuntarily terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5),

---

[4] On September 13, 2023, KidsVoice was appointed to serve as H.G.'s legal counsel in conformity with 23 Pa.C.S. § 2313(a). Although it does not appear that H.G. had a guardian *ad litem* ("GAL") formally appointed during these termination proceedings, we note that KidsVoice served as her GAL during the dependency proceedings detailed above. *See generally* CYF Exhibit 1. To the extent that KidsVoice may have operated in a dual capacity as both legal counsel and GAL in these termination matters, we note that the orphans' court determined that no conflict existed that would preclude the KidsVoice appointment. *See* Order, 9/13/23, at 1 ("The court finds that no conflict exists that would prevent KidsVoice from accepting this appointment."). Thus, we discern no structural error in these appeals. *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1234-36 (Pa. 2020) (mandating "limited" *sua sponte* review by appellate courts to ensure children are appointed counsel in contested termination matters and the court has "determined that the child's best interests and legal interests" do not conflict in cases where a single attorney serves as GAL and legal counsel).

and (8), and § 2511(b). On March 26, 2024, Mother filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). On April 26, 2024, the orphans' court filed a responsive opinion pursuant to Rule 1925(a)(2)(ii).

Mother has raised the following issues for our consideration:

> 1.    Did the trial court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2), (5), and (8)?
>
> 2.    Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Mother's parental rights would best serve the needs and welfare of [H.G.] pursuant to 23 Pa.C.S. § 2511(b)?

Mother's brief at 6.

Our standard of review in this context is well-established:

> In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.
>
> An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

> In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by § 2511, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *Id.* at 830; *see also* 23 Pa.C.S. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to § 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). This Court need only agree with the orphans' court's determination as to any one subsection of § 2511(a), in addition to § 2511(b), in order to affirm the orphans' court's termination holding. *See M.E.*, 283 A.3d at 830 (citing *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*)).

Our analysis in this case will focus upon § 2511(a)(2) and (b), which provides as follows:

**(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:

. . . .

(2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.

. . . .

**(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

In order to satisfy § 2511(a)(2), the petitioning party must establish: "(1) repeated and continued incapacity, abuse, neglect or refusal; (2) that such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence; and (3) that the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied." *In re Adoption of A.H.*, 247 A.3d 439, 443 (Pa.Super. 2021). Grounds for termination pursuant to § 2511(a)(2), however, "are not limited to affirmative misconduct, but concern parental incapacity that cannot be remedied." *Id*.

(citing **In re Z.P.**, 994 A.2d 1108, 1117 (Pa. Super. 2010)).  In reviewing the findings pursuant to § 2511(a)(2), we remain mindful that "[p]arents are required to make diligent efforts toward the reasonably prompt assumption of full parental duties." **A.H.**, 247 A.3d at 443.

As it relates to § 2511(a)(2), Mother challenges the orphans' court's determination on evidentiary and sufficiency grounds.  **See** Mother's brief at 17-26.  The orphans' court's relevant findings were summarized in its Rule 1925(a)(2)(ii) opinion:

> Mother's substance abuse issues have been the primary concern in this case.  She has been in several different treatment programs while the case was open. . . .  Unfortunately, she has failed to demonstrate an ability to remain clean after being released from these programs.  Mother had approximately two years to seek and sustain recovery and has been unable to do so.

Orphans' Court Opinion, 4/26/24, at 7.  After reviewing the certified record, we find ample support for the orphans' court's conclusions above.

With respect to the first prong of § 2511(a)(2), the record definitively establishes that Mother suffers from a repeated and continued incapacity, namely, her ongoing abuse of narcotics.  Mr. Riley's testimony detailed CYF's initial involvement in this case, which was precipitated by Mother's admitted use of opioids and cocaine during her pregnancy with H.G. in December 2021. **See** N.T., 2/9/24, at 10-12.  Mother's substance abuse continued thereafter, as Mr. Riley testified that she later tested positive for fentanyl metabolites in March 2023 and the records of the dependency proceedings indicate that she tested positive for cocaine in approximately August 2023.  **See id**. at 18; **see**

*also* CYF Exhibit 1 at 46. Indeed, Mother's substance abuse was the predominant concern throughout the dependency proceedings concerning H.G. *See generally* CYF Exhibit 1. Based upon this evidence, the first prong of § 2511(a)(2) is established.

It is also clear that circumstances of this case satisfy the second prong of § 2511(a)(2), *i.e.*, that Mother's incapacity have caused H.G. to be without essential parental care, control or subsistence. Specifically, H.G. has been removed from Mother's care for the virtual entirety of her life. Moreover, Ms. Szymanski testified that Mother's repeating cycle of entering substance abuse treatment and then subsequently relapsing caused her contact with H.G. to be limited and inconsistent. *See* N.T., 2/9/24, at 47-58. Indeed, Mother's own testimony confirms that her relapses into substance abuse caused her to lose touch with H.G. *See id*. at 65 ("[W]hen I relapsed, I didn't want to – like I don't want my daughter to see me like that, you know."). Overall, Ms. Szymanski opined that Mother, generally, was inconsistent in her efforts to maintain contact with H.G. and provide her with parental care and support. *See id*. at 58 ("[W]e have these inconsistencies where [Mother] would say I'm going to come and then not show up."). Based upon the foregoing, we find the second element of § 2511(a)(2) is met.

Finally, we turn to the third and final component of § 2511(a)(2), which requires us to evaluate the orphans' court's conclusion that the causes of

Mother's incapacity cannot or will not be remedied. **See** 23 Pa.C.S. § 2511(a)(2). As above, the certified record supports the court's findings.

Specifically, the testimonies of Mr. Riley and Mother collectively indicate that she sought treatment through at least seven separate substance abuse programs during the course of this case, including Pyramid, Tadiso, Gateway, Clear Day, Spirit Life, Sojourner House, and White Deer Run. **See** N.T., 2/9/24, at 35-36, 39-40, 59-62. Mr. Riley reported that Mother successfully completed a course of inpatient treatment with Gateway and an outpatient program offered by Pyramid. **See id**. at 36. Concomitantly, however, Mother testified that she was rejected by Sojourner House and also failed to complete the programs offered by Clear Day and Spirit Life. **See id**. at 61. Indeed, Mr. Riley explained that Mother participated in the termination hearing remotely from White Deer Run's inpatient treatment program. **See id**. at 9-10.

Reviewing the evidence above, there is little question that Mother was still seeking to address and ameliorate her substance abuse incapacity at the time of the termination hearing, which continues to persist despite approximately twenty-five months of services and Mother's attempts to engage with seven different therapy providers. Thus, we conclude that the third and final aspect of § 2511(a)(2) has been satisfied. The record bears out that Mother cannot remedy the conditions and causes of her parental incapacity.

Based upon the foregoing, we discern no abuse of discretion or error of law in the orphans' court's findings pursuant to § 2511(a)(2). The evidence above establishes that Mother suffers from an ongoing parental incapacity that has deprived H.G. of essential parental care, control, and subsistence and that cannot, or will not, be remedied.

As CYF established the statutory grounds for the termination of Mother's parental rights pursuant to § 2511(a), we turn to § 2511(b), which affords "primary consideration to [H.G.'s] developmental, physical, and emotional needs and welfare[.]" 23 Pa.C.S. § 2511(b). Our Supreme Court has generally outlined this inquiry, as follows:

> [C]ourts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent.
>
> Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis. We have observed the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children involved. Thus, the court must determine each child's specific needs.
>
> Moreover, the child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. As further guidance, we have identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The courts must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

*Interest of K.T.*, 296 A.3d 1085, 1105-06 (Pa. 2023) (cleaned up).

The extent, however, of the "bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010) (cleaned up). Rather, it is the orphans' court's province to "consider the totality of the circumstances when performing a needs and welfare analysis." *M.E.*, 283 A.3d at 839 (cleaned up). This Court has clarified that it is "within the discretion of the orphans' court to prioritize the safety and security" of children "over their bonds with their parents. *Id*. We will not disturb such an assessment if the orphans' court's factual findings are supported by the record. *Id*.

The orphans' court found Mother's "unstable lifestyle" and "inability to maintain long term recovery" precluded her from providing "the safety and stability that [H.G.] needs to flourish." Orphans' Court Opinion, 4/26/24, at 10 ("The court has no doubt that Mother genuinely loves her child and has good intentions of getting clean and reunifying with her. Sadly, Mother has been unable to make the changes necessary to provide for the safety, stability[,] and permanence that [H.G.] requires."). We find sufficient support for the orphans' court's conclusions.

With respect to the bonding analysis mandated by our Supreme Court, we observe that there is little question that Mother shares an affectionate bond with H.G., as testified to by Ms. Szymanski who reported concerning her observations of Mother's supervised visits with H.G. *See* N.T., 2/9/24, at 49,

56. However, it is equally clear that H.G.'s true parental bond lies with Foster Mother, who has been caring for H.G. for the virtual entirety of the child's life.

Specifically, CYF introduced into evidence a bonding analysis report authored by Eric Bernstein, Psy.D., who observed and assessed H.G.'s interactions with Foster Mother in January 2024.[5] *See* CYF Exhibit 15.[6] He opined on the relationship between H.G. and Foster Mother, as follows:

> [I] have no reservations in endorsing [Foster Mother] as an appropriate permanency resource should the [c]ourt move forward with the termination of [Mother's] parental rights. To this point, [Foster Mother] offers consistent, safe, and supportive care to the child. Since the child has been in her care from the outset through much of her life suggests that the child views her as the psychological parent upon whom she relies for her everyday needs. The child refers to [Foster Mother] as her mother.

CYF Exhibit 15 at 4. Mr. Riley echoed Dr. Bernstein's conclusions, testifying without equivocation that H.G. was thriving in Foster Mother's care and expressing his opinion that termination of Mother's parental rights would best serve H.G.'s needs and welfare. *See* N.T., 2/9/24, at 31-32.

Based on the foregoing, we find no abuse of discretion or error of law in the orphans' court's conclusion that involuntary termination of Mother's

---

[5] Although Dr. Bernstein was also scheduled to observe and assess H.G.'s relationship with Mother, she failed to show up for the appointment and did not reschedule. *See* CYF Exhibit 15 at 1; *see also* N.T., 2/9/24, at 53, 64.

[6] At the termination hearing, this report was referred to as "CYF Exhibit 4." *See* N.T., 2/9/24, at 25. It appears in the record, however, as "CYF Exhibit 15." To avoid confusion, we have cited this report as CYF Exhibit 15.

parental rights would best serve H.G.'s developmental, physical, and emotional needs and welfare pursuant to § 2511(b).

Having determined that the orphans' court's findings pursuant to § 2511(a)(2) and (b) were supported by sufficient evidence, we affirm the order involuntarily terminating Mother's parental rights.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 8/20/2024